IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CASE NO.: 7:21-CR-7 (WLS) |
| | : | |
| BARRY K. DAISE | : | |
| | : | |
| Defendant. | : | |
| | : | |

**ORDER**

**I.     Introduction**

Before the Court is Defendant Barry Daise's Objection to the Presentence Report (Doc. 131).[1] Therein, Defendant Daise objects to the Presentence Investigation Report (Doc. 133) recommendation that his offense level should be 32 based on the career offender enhancement under U.S.S.G §§ 4B1.1 and 4B1.2. Defendant Daise argues that his Georgia "Sale of Cocaine" and "Possession with Intent to Distribute Cocaine" convictions do not qualify as "controlled substance offenses" within the meaning of Sections 4B1.1 and 4B1.2 because Georgia defines those offenses more broadly than the federal definition of those offenses in the Controlled Substance Act ("CSA"). Defendant Daise makes two arguments that the Georgia laws are broader than the corresponding CSA offenses.[2]

**II.    Georgia Cocaine Laws are Not Overbroad because they Include Ioflupane**

Defendant Daise argues, first, that because the Georgia cocaine laws include possession of Ioflupane, which the CSA does not, the Georgia Cocaine laws are overbroad. (Doc. 131, at 12). Both the CSA and Georgia definitions of cocaine include "derivatives of cocaine." 21 U.S.C. § 802(17); O.C.G.A. § 16-13-26(1)(D).

Ioflupane is "derived from cocaine via ecgonine" and was removed from the CSA drug schedules in 2015 because of its potential value in diagnosing Parkinson's disease. *See* 80 Fed.

---

[1] Other objections by Defendant Daise were overruled by the Court during the sentencing hearing without a written order.
[2] The Court overrules Defendant Daise's objection on a ground that does not require the Court to discuss the issues of Ioflupane and overbroadness, but the Court does so nonetheless to address these significant arguments by Defendant Daise.

1

Reg. 54715. The 11th Circuit recognized this in *United States v. Jackson*. 55 F.4th 846, 851 (11th Cir. 2022). Defendant Daise argues that, because Ioflupane is specifically excluded from the CSA, but, as a derivative of cocaine, Ioflupane is included in the definition of Cocaine under Georgia law, the Georgia laws are broader than the CSA. The Government counters that because Ioflupane is not derived from cocaine, but ecgonine, the Georgia laws, like the CSA, do not include Ioflupane. Accordingly, the Georgia laws are not overbroad on that basis. (Doc. 135, at 19–20).

The Court is persuaded by the Government's argument that Ioflupane is not a derivative of cocaine, but an immediate progenitor. Ioflupane, as noted, is derived from cocaine via ecgonine. The Georgia definition of cocaine specifically excludes extractions which do not contain cocaine or ecgonine. Therefore, the Court finds that Defendant Daise's argument that the Georgia cocaine definition that does not specifically exclude Ioflupane is broader than the CSA definition of cocaine which specifically excludes Ioflupane, unpersuasive.

### III. Georgia Cocaine Laws are not Overbroad because they Include Conformational Isomers

Defendant Daise argues, next, that the Georgia cocaine statutes under which he was convicted, which allow convictions for possession of "all stereoisomers of cocaine," is broader than the CSA definition, which includes only the "optical and geometric isomers" of cocaine. (Doc. 131, at 2–16). In support of this argument, Defendant Daise submitted the Declaration of Professor Neil K. Garg (Doc. 132-1) which expounded upon the various stereoisomers of cocaine and opined that the Georgia definition "may be broader [than] the federal definition."

The Federal Rules of Evidence do not apply at sentencing proceedings. *United States v. Paisley*, 178 F. Appx 955, 962 (11th Cir. 2006) (citing Fed R. Evid. 1101(d)(3). Instead, a sentencing court may consider any information provided that has "sufficient indicia of reliability, and the court makes explicit findings of fact as to credibility *United States v. Baker*, 432 F.3d 1189, 1254 (11th Cir. 2005) (citing U.S.S.G. § 6A1.3(a)); *see also U.S. v. Ghertler*, 605 F.3d 1256, 1269 (11th Cir. 2010).

Although the Federal Rules of Evidence do not apply here, and therefore *Daubert* does not necessarily control, its inquiry is instructive even in the sentencing context. *See United States*

2

*v. Pitts*, 794 F.Appx 868, 872–83 (11th Cir. 2019) (noting that the district court incorrectly cited Daubert and Federal Rule of Evidence 702 as controlling, but finding that its findings of fact in its analysis under *Daubert* was sufficient to satisfy the criteria under the "sufficient indicia of reliability" standard). Under *Daubert*, admissibility does not focus on an expert's conclusions but, rather, on the soundness of the expert's methodology. *United States v. Frazier*, 387 F.3d 1244, 1275 n.10 (11th Cir. 2004) (Tjoflat, G., concurring) (citing *General Elec. Co. v. Joiner*, 522 U.S. 136, 118 (1997). Accordingly, an expert must be shown to have "applied the [reliable] principles and methods reliably to the facts of the case." *Frazier*, 387 F.3d at 1275 n.10 (citing FED R. EVID. 702).

Professor Garg is a Distinguished Professor of Chemistry at the University of California, Los Angeles (UCLA). (Doc. 132-1, at 1). Professor Garg states his purpose for the declaration as "bring[ing] attention to 'conformational isomers' of cocaine, a third form of stereoisomer that is distinct from optical and geometric isomers of cocaine" (*Id.*).

Defendant Daise argues Professor Garg's opinion is reliable because it did more than "uncritically point to someone else's work product," instead, he explained "from soup to nuts, what conformational isomers are, how they come about, and how they would be expected to occur in the context of cocaine, and *then* pointed to the "seminal" study that corroborates this fact. (Doc. 141, at 11) (emphasis in original). The Court disagrees for two reasons.

First, Professor Garg has failed to adequately explain the applicability of the "seminal" study to the present case. (*See* Doc. 132-1, at 4–5). The study in question appears to be, at best, tangential to the conclusions Professor Garg ultimately draws. (*Id.*) The study used "molecular mechanics" and "semiempirical techniques" to evaluate "various conformational isomers of cocaine" and study "their relative energies." (*Id.*). Although, by implication, the study acknowledges the existence of "conformational isomers," it appears ultimately focused on the "relative energies" of such isomers. (*Id.*), The study, therefore, does not appear to have been intended to investigate the existence of conformational isomers—the relevant legal issue—but instead merely suggests their existence by studying their differences in energy. (*See Id.*) Professor Garg fails to adequately explain this incongruency. (*See Id.*) The Court is, accordingly, left to speculate about the practical relevance of the study, and to what degree the study

3

supports Professor Garg's ultimate conclusions. The Court declines to do so in the absence of clear guidance from Professor Garg.

Second, Professor Garg fails to adequately explain how he proceeds from his discussion of chemical principles about which the Court does not dispute that he is an expert, to his ultimate conclusion about the breadth of the federal definition of cocaine. (*See* Doc. 132-1, at 4–7). In articulating his conclusions, Professor Garg makes generalized statements such as:

> Under the scope of this report and my expertise, I cannot comment on the legal ramifications of conformational isomers with regard to cocaine. However, as mentioned earlier, "conformational polymorphism" is a well-studied topic in pharmaceutical chemistry that may very well be relevant to this discussion of conformational isomers of cocaine."

(Doc. 132-1, at 6) (citation omitted). And

> In the case of cocaine, it is well known that cocaine is often formulated with different adulterants or diluents and are accessed with differing levels of purity. Adulterants, diluents, or impurities can be expected to impact a compound's conformation, leading to conformational isomers. Accordingly, lawmakers and practitioners should consider if the Georgia definition, which includes all "stereoisomers of cocaine," may be broader than the federal definition.

(Doc. 132-1, at 6–7).

In each statement, Professor Garg proceeds from a generalized premise about the topic of cocaine isomerization, and, from it, appears to make a conclusion relevant to the Defendant Daise's argument. (*Id.*) These generalized, conclusory remarks, however, fall well short of explaining, to this Court's satisfaction, how Professor Garg has "applied the [reliable] principles and methods reliably to the facts of the case."

Thus, the Court finds that because Professor Garg failed to explain the applicability of his seminal study to the present case, and he has failed to show how he applied reliable principles and methods to the facts of this case, his opinion lacks sufficient indicia of reliability to be considered, and relied upon by the Court, in Defendant Daise's sentencing. Accordingly, because Defendant Daise's argument relies entirely on Professor Garg's Declaration, and the

Court has not accepted such evidence alone as sufficient to sustain the conclusion Defendant Daise asserts, Defendant Daise's argument that his Georgia convictions are not controlled substance offenses within the meaning of Sections 4B1.1 and 4B1.2 fails.

### III. Conclusion

In sum, the Court finds Defendant Daise's argument that the definition of cocaine under Georgia Law is overbroad because Georgia Law includes Ioflupane unpersuasive, and the Court finds that Defendant Daise has not produced evidence that is sufficiently reliable to support its theory that the definition of cocaine under Georgia Law is overbroad because it includes conformational isomers.

The Court agrees with the Government and finds that Defendant Daise's predicate offenses for career offender purposes are correctly included because they involve prohibited conduct with respect to "controlled substances" under Georgia law and impose felony penalties.

In sum, the Court finds that Defendant Daise's offenses are controlled substance offenses under Georgia law which is prohibited conduct under Guideline Section 4B1.2 and therefore constitute offenses resulting in Defendant Daise's classification as a career offender. The Court further finds that since said prohibited conduct involves controlled substances under Georgia law, whether the Georgia law definition of cocaine is broader than the federal definition is of no avail. The Court makes no finding as to whether the Georgia law definition as asserted by Defendant is, in fact, broader. Accordingly, the Court **OVERRULES** Defendant Barry Daise's Objection to the Presentence Report (Doc. 131).

**SO ORDERED**, this 27th day of September 2023.

                                        **/s/ W. Louis Sands**
                                        **W. LOUIS SANDS, SR. JUDGE**
                                        **UNITED STATES DISTRICT COURT**